796 A.2d 913

CITY OF TRENTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. 222 WEST ASSOCIATES FUND, SIDNEY SUSSMAN, DEFENDANTS–APPELLANTS,FUNB, AS CUSTODIAN FOR D.H. ASSOCIATES; FIRST NATIONAL STATE BANK OF SOUTH JERSEY, A NATIONAL BANKING ORGANIZATION, SUCCESSOR BY CHANGE OF NAME TO FIRST NATIONAL STATE BANK OF

CENTRAL JERSEY; COLUMBIA SAVINGS AND LOAN ASSO-
CIATION, A CORPORATION OF THE STATE OF NEW JERSEY,
ITS SUCCESSORS AND ASSIGNS; 224 WEST STATE STREET
CORPORATION, ITS SUCCESSORS AND ASSIGNS; AND
PRENTICE REALTY COMPANY OF TRENTON, ITS SUCCES-
SORS AND ASSIGNS, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Argued April 17, 2002—Decided May 13, 2002.

Before Judges BAIME, FALL and AXELRAD.

*Edwin D. McKirdy* argued the cause for appellants (*McKirdy & Riskin,* attorneys; *Mr. McKirdy,* of counsel; *Adelaide Riggi,* on the brief).

*Harvey C. Johnson* argued the cause for respondent.

The opinion of the Court was delivered by

AXELRAD, J.T.C. (temporarily assigned).

In this condemnation action, the property owner, 222 West Associates ("222 West"), appeals from the granting of summary judgment to plaintiff, the City of Trenton ("City"), valuing the property with a four and one-half story height limitation rather than the nine-story height contained in the preliminary approval.

The subject property, which contains a structure known as the Roebling Mansion, is located at 222 West State Street in Trenton. On September 19, 1985, the City passed ordinance 85–108, approving the Roebling Mansion Redevelopment Plan ("Roebling Plan"), declaring the subject property a blighted area. The Roebling Plan called for "[t]he construction of a commercial office building with parking in the rear of the building" and "[t]he rehabilitation of the existing building at 222 West State Street."

On September 4, 1987, the City passed Ordinance 87–67, approving an amended Roebling Plan which provided for the construction of a nine-story office building on the site with surface parking in the rear of the building. On September 10, 1987, the City granted preliminary site plan approval to 222 West "to construct a nine-story office building with a nine-story tower of 118,000 square feet attached to an historic three-story building of approximately 3,000 square feet for property located at 222 West State Street. . . ."

In 1987 the Legislature adopted the Capital City Redevelopment Corporation Act ("CCRCA"), *N.J.S.A.* 52:9Q–9 to –27, to assist Trenton in its redevelopment plans. The Act expressly recognized that the "city of Trenton is of unique significance to the State and the nation, both as the State capital and center of State

governmental operations," that it "lacks a demographic or commercial center of significant magnitude," and that the "city is in great need of redevelopment and revitalization." *N.J.S.A.* 52:9Q–10a & b. The Legislature further found and declared that:

> d.  It is a public purpose of this State to establish a capital district within the city and to create a redevelopment corporation operating within the boundaries of the district, which will plan, coordinate and promote the public and private development of the district in a manner which enhances the vitality of the district...
>
> [*N.J.S.A.* 52:9Q–10d.]

The Legislature established in the Executive Branch the Capital City Redevelopment Corporation ("CCRC") in order to "plan, coordinate and encourage an appropriate balance of governmental and nongovernmental facilities and activities in the district, and assist in the preservation of public, recreational and cultural facilities, in the preservation and restoration of historic structures and sites, and in the stimulation of private investment in the district...." *N.J.S.A.* 52:9Q–10e.

The CCRC was statutorily mandated to adopt a twenty-year Capital City Renaissance Plan ("Renaissance Plan") to "guide the use of lands within the district in a manner which promotes the economic vitality of the district and enhances the quality of the public environment." *N.J.S.A.* 52:9Q–17a. The CCRC was required to develop the plan "in consultation with the State Building Authority, the planning board of the city of Trenton, and the planning board of the county of Mercer." *N.J.S.A.* 52:9Q–17b. Moreover, the statute required future compliance, providing that:

> Upon adoption of the [Renaissance] plan, the planning board of the city of Trenton, the planning board of the county of Mercer, the State Building Authority, and any other governmental entities with plans affecting physical development within the district shall review and revise their plans to ensure that they are consistent with the Capital City Renaissance Plan. Any plan which affects the physical development of the district and is adopted by any governmental entity after the adoption of the Capital City Renaissance Plan shall be consistent with that plan.
>
> [*N.J.S.A.* 52:9Q–17d.]

On October 30, 1989, the CCRC adopted the Capital City Renaissance Plan ("Renaissance Plan"). The Renaissance Plan con-

tained recommendations for, *inter alia,* a four and one-half story limit for the area along State Street.

In accordance with the statutory dictates, on January 4, 1990, the City adopted ordinance 90–9, "TO AMEND CHAPTER XIX (ZONING AND LAND DEVELOPMENT) OF THE REVISED GENERAL ORDINANCES OF THE CITY OF TRENTON TO MAKE THE ZONING AND LAND DEVELOPMENT ORDINANCES COMPATIBLE WITH THE CAPITAL CITY RENAISSANCE PLAN. . . ." The ordinance included amendment 19–405D, providing for "Refer[ence] to Capital City Renaissance Plan for height limits" for the maximum building height for business uses.

On April 25, 1991, the City amended its land use element of its Master Plan to conform to the Renaissance Plan, providing in relevant part:

> *Low Density Downtown.* This land use designation provides for a maximum development height of four and a half (4½) stories at a Floor Area Ratio (FAR) of up to four (4). This low density downtown district includes ... *Roebling Mansuion [sic], and West Hanover Street.*

> [Emphasis added, in part.]

On March 6, 1997, the City passed Ordinance 97–41, which amended the Roebling Plan to allow the City to acquire the property by condemnation. The City filed a Declaration of Taking and condemnation action and on July 20, 1998, Judge Feinberg set March 6, 1997 as the date of valuation for the Property. Neither party accepted the recommendation of the Commissioners. On January 19, 2001, 222 West moved for partial summary judgment, seeking an order directing that the property taken be valued with the September 10, 1987 nine-story site plan approval in place and to bar the City's expert from testifying as to his feasibility analysis of value. The City cross-moved for summary judgment, seeking an order directing that the property be valued without the preliminary site plan in place, and to bar the defendant's expert from testifying to value based upon existence of the site plan approval.

The motions were argued before Judge Grall on March 30, 2001. The judge reserved decision and then delivered her oral opinion on August 22, 2001. As articulated by the court:

The issue on both motions is whether the property should be valued with approvals in place to build an office building not to exceed nine stories, or whether amendments to Trenton zoning law and master plan adopted in January of 1990 and April of 1991 and the enactment of the Capital City Redevelopment Corporation Act and the subsequent adoption of the renaissance plan, adopted pursuant to that act, control and preclude approval of construction of a structure that would be inconsistent with the plan developed under the Capital City Redevelopment Act.

The Judge granted summary judgment in favor of the City, ruling that the property "be valued with no approvals in place as of March 6, 1997," barring the testimony of 222 West's appraiser "to the extent based on approvals or probable approvals of a nine-story office building," and barring the testimony of the City's appraiser regarding a "feasibility analysis[.]" On October 12, 2001, Judge Grall denied 222 West's motion for reconsideration.

On appeal, 222 West raises the following contentions:

POINT I

THE TRIAL COURT MISAPPLIED THE HOLDING IN *PALATINE I* AND IMPROPERLY RULED THAT A PRELIMINARY APPROVAL LAPSES AUTOMATICALLY AFTER THE STATUTORY PERIOD.

POINT II

*N.J.S.A.* 40:55-21.10 DOES NOT SUPPORT THE TRIAL COURT'S CONCLUSION THAT THE 1987 ROEBLING MANSION PLAN WAS "EFFECTIVELY AMENDED" BY THE JUNE 1991 AMENDMENTS TO THE CITY OF TRENTON'S MASTER PLAN.

POINT III

THE "TIME OF DECISION" RULE MANDATES THAT A COURT SHOULD APPLY THE LAW IN EXISTENCE AS OF MARCH 1997, THE DATE OF TAKING.

POINT IV

222 WEST'S PRELIMINARY APPROVAL WAS NOT "PREEMPTED" BY THE CAPITAL CITY REDEVELOPMENT PLAN.

After reviewing the record in light of the oral and written arguments of the parties, we affirm the grant of summary judgment and ruling that the subject property should be valued without the nine-story height limitation in place substantially for

the reasons articulated by Judge Grall in her comprehensive oral opinions of August 22, 2001 and October 12, 2001.

On September 10, 1987, 222 West obtained preliminary site plan approval to construct a nine-story office building attached to the historic three-story building located on the subject property. The approval was contingent upon various conditions which were made part of the preliminary approval and had to be satisfied before final site plan approval. The local zoning ordinance, § 19–12.4, required site plan approval as a condition of issuance of any construction permit. The property owner made no further application for extension of the preliminary site plan approval, final site plan approval, application for modification of any of the conditions, or application for any specific permits.

Under *N.J.S.A.* 40:55D–49, the property owner was protected against the application of adverse zoning amendments unrelated to public health or safety for a three-year period following preliminary site plan approval. The property further qualified for extension of the preliminary approval until December 31, 1996, under the Permit Extension Act enacted on August 7, 1992, *N.J.S.A.* 40:55D–133a. After the emergency extension period lapsed, the statutory period of protection given to the preliminary approval from adverse changes and zoning regulations expired. Subsequent to December 31, 1997, the City had no authority to grant final site plan approval and issue permits to 222 West in accordance with its inconsistent preliminary site plan approval for the construction of a nine-story office building. *Palatine I v. Planning Bd. of Township of Montville,* 133 *N.J.* 546, 553, 628 *A.*2d 321 (1993).

The Court in *Palatine I* makes clear that a preliminary approval which has exhausted its statutory protections is subject to any changes made to the zoning laws following the grant of approval. *Id.* at 554, 628 *A.*2d 321. According to the Court,

The [preliminary] approval itself is valid indefinitely, but its effect of insulating the holder from changes in the zoning laws is limited to the specified term of years. If the applicable zoning laws have not changed, the holder of preliminary approval may continue past the five-year period without obtaining further approvals. *How-*

ever, *if the zoning laws have changed, then after the five-year period of protection has elapsed, the municipality may enforce those new regulations against the holder of preliminary approval.*

[*Id.* at 553–54, 628 *A.*2d 321 (emphasis added, in part).]

Thus, as of March 6, 1997, the date of the taking, the municipal zoning laws in effect for the subject property prohibited nine-story construction and provided for a maximum height of four and one-half stories.

█ We reject, as did the motion judge, 222 West's argument that all aspects of the Roebling Plan remained in effect, there was no change in zoning and, therefore, its preliminary site plan approval for a nine-story office building was viable as of the date of the taking. At the time of these amendments, the statutes were silent as to specific requirements for amending a redevelopment plan. It is clear from the legislation that the Renaissance Plan was designed to pre-empt and supercede the Roebling Plan. The City adopted the 1990 and 1991 amendments to its zoning ordinance and master plan pursuant to the Legislative mandate "to review and revise [its] plans to ensure that they are consistent with the Capital City Renaissance Plan." *N.J.S.A.* 52:9Q–17d. In enacting these implementing ordinances, the City inferentially amended the Roebling Plan to the extent that it was inconsistent with the Renaissance Plan. A "redevelopment plan . . . is always subject to revision, amendment or abandonment. . . ." *Housing Auth. of City of Newark v. Ricciardi,* 176 *N.J.Super.* 13, 21, 422 *A.*2d 78 (App.Div.1980).

As Judge Grall found:

[The] statutes [relating to *N.J.S.A.* 40:55–21–10] do not provide any special procedure for revision of a development plan.

Given that the statute in effect at the time of the amendments to the zoning law and master plan gave precedence to the master plan [*N.J.S.A.* 40:44–21.10, now repealed], I find that the amendments to the master plan effectively amended the amendments to the Roebling Redevelopment Plan. The specific reference to the property at issue, Roebling Mansion, clearly expresses the city's intention with respect to height limits for the subject property. Indeed, the city had no discretion to allow inconsistency between the Renaissance Plan and the Roebling [Plan] . . . by virtue of *N.J.S.A.* 52:9Q–17[d]. . . .

. . .

Subsequent to the amendments to the Trenton zoning ordinance and master plan relevant to the Roebling Mansion, the legislature enacted the Redevelopment and Housing Law. With the enactment of that law, the statutes cited previously dealing with redevelopment plans were repealed. Under the new act, *N.J.S.A.* 40A:12A-7C [enacted August 5, 1992 and made retroactive to January 18, 1992], there are special procedures required for amendment of a redevelopment plan. There are other differences under the 1992 statute.

. . . .

222 West State Street Associates, the defendants here, rely on this statute to argue that the 1990 and 1991 amendments to Trenton zoning law and master plans were ineffective with respect to amendment of the Roebling Mansion Redevelopment Plan . . . [on] the basic proposition that this Court should apply the statute in effect on the date of its decision. . . . The defendant's argument begs the question.

. . . .

The best reading of the statutes is that the zoning and plans affecting [the] subject property were changed by the 1990 and 1991 amendments, and that the approval to build a nine story building was, at least as of 1991, no longer consistent with applicable zoning or master plans at that time.

. . . .

A construction of the municipal land use law to permit the City of Trenton to grant an approval that is inconsistent or an extension of an approval that is inconsistent with the Capital City Renaissance Plan would directly conflict with the State's statute in an area where there is a need for uniformity to effectuate the legislature scheme, in an area where the state's scheme is pervasive and comprehensive to the extent that municipal action would be inconsistent with the state's scheme, and also stands as an obstacle to accomplishment of the full purposes and objectives of the Capital City Redevelopment Corporation Act.

. . . .

The nine story approval that is at the heart of this summary judgment motion is directly and blatantly inconsistent with the provision for 4.5 stories that is applicable under the Capital City Renaissance Plan to the subject property. Under those circumstances, summary judgment will be granted to the City of Trenton. The City of Trenton has no discretion to grant an extension or a final approval that is inconsistent with the Capital City Renaissance Plan. . . .

In response to 222 West's motion for reconsideration, the judge re-iterated:

[T]his court did not rule that the 1991 amendments to the City of Trenton master plan which postdates the Roebling Mansion Redevelopment Plan, alone effectively amended the redevelopment plan. Rather, the Court's ruling was that the adoption of the Capital City Redevelopment Plan, the amendment of the zoning ordinance, and the amendment of the master plan together effectively amended the Roebling Mansion Redevelopment Plan.

. . . .

As I mentioned previously, the statute was silent as to specific amendment requirements and the planning board and municipality through procedures consistent with the then controlling procedures for adoption of redevelopment plans amended zoning ordinances and then subsequently adopted the Capital City Redevelopment Plan.

Affirmed.