917 A.2d 815 (2007)
391 N.J. Super. 214
Frank WEEDEN, Trenton Historical Society, Adeline Community Civil Association, Cass Street Neighborhood Association, Jersey Street Community Association, Lamberton Historic District Committee, Lamberton Strides, Executive Board/South Broad Community Civic Association and Trenton Gay & Lesbian Civic Association, Inc., Plaintiffs-Appellants,
v.
CITY COUNCIL OF the CITY OF TRENTON, JAT Properties, LLC, Defendants-Respondents, and
The Zoning Board of Adjustment of the City of Trenton, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 2007.
Decided March 19, 2007.
*817 Michele R. Donato argued the cause for appellants.
Arnold C. Lakind, Lawrenceville, argued the cause for respondent JAT Properties (Szaferman, Lakind, Blumstein, Blader & Lehmann, attorneys; Mr. Lakind, of counsel and on the brief).
R. Denise Lyles argued the cause for respondent City Council of the City of Trenton (Joseph A. Alacqua, Special Counsel joined in the brief of respondent JAT Properties).
Before Judges S.L. REISNER, SELTZER and C.L. MINIMAN.
The opinion of the court was delivered by
S.L. REISNER, J.A.D.
This case arises from a dispute over an application by defendant, JAT Properties, LLC (JAT), to construct a sixty-seat restaurant with a drive-thru window in a designated redevelopment area of Trenton, New Jersey. The principal issue is whether the local zoning board of adjustment had jurisdiction to grant a variance from the redevelopment plan, which prohibited construction of drive-in restaurants. We hold that it did. We also conclude that, under the unusual circumstances of this case, the Law Division judge properly decided plaintiffs' challenge herself and properly upheld the board's decision.

I
In March 1991, the Trenton City Council adopted the Roebling Complex Redevelopment Area Plan (the Redevelopment Plan or the Plan) under the Local Redevelopment Housing Law (LRHL), N.J.S.A. 40A:12A-1 to -49. The Plan, most recently amended in 1997, sets forth its goals as follows:
The primary objective of this Redevelopment Plan is to eliminate those conditions which cause the area to be considered a renewal (blighted) area. . . . The City's intention is to create a mixed-use development, preserving the architectural and historic significance of the Area, within which a variety of activities and functions will coexist and be mutually supportive. The uses anticipated for this Redevelopment Area include commercial, residential, cultural and light industrial.
In addition to these general goals, the Redevelopment Plan sought to achieve six specific objectives: 1) to preserve the historic significance of the area by adapting and reusing existing structures and streets; 2) to provide new retail opportunities for local merchants; 3) to promote after-hours and weekend use of the area with retail, cultural and recreational activities; 4) to offer open spaces and pedestrian walkways; 5) to integrate the area with its surroundings; and 6) "[t]o provide adequate parking, traffic control and lighting" to manage the area and prevent "any adverse effects on the neighborhood."
The Plan allowed restaurants, but prohibited drive-in restaurants:
[p]ermitted uses in the Redevelopment Area include single family and multi-family uses as permitted in mixed use zones, all retail and office uses as permitted in Business B zones, except that drive-in restaurants and used car lots are prohibited. . . .
In March 2004, JAT applied to defendant City of Trenton Zoning Board of Adjustment (Zoning Board or Board) for a use variance to construct a combined Taco Bell and Long John Silver restaurant which would seat sixty people but would *818 also have a one-lane drive-thru window.[1] During two days of hearings, plaintiff presented expert testimony supporting the application and establishing that the project was not economically viable without the drive-thru feature. Several objectors testified that the fast-food and drive-thru features of the restaurant were inconsistent with revitalization of the neighborhood and with the more classic urban structures the redevelopment plan intended. They expressed concerns that a fast-food restaurant would attract undesirable characters late at night and would be a source of litter, and that the drive-thru feature would increase traffic and would not encourage patrons to remain in the neighborhood.
In a detailed written Resolution dated July 21, 2004, the Zoning Board approved the application. The Resolution described the property as triangular in shape and isolated, being bounded by Route 129, South Broad Street and the southbound ramp from Route 129. However, it was also located near the Sovereign Bank Arena complex. The Board concluded that the property "is uniquely situated and the use proposed is particularly suited for the property," that the proposed drive-thru restaurant is consistent with the Redevelopment Plan, and that it complements the Arena whose patrons would likely eat at the restaurant. The Board also found that "[t]he development is situated on an environmentally sensitive area and will serve to develop the property so to relieve the surrounding community of a blighted area." The project would further the purposes of the Redevelopment Plan "to eliminate blight, provide a mix of uses and add job opportunities."
The Board concluded that the drive-thru feature would "promote after hours use" and "provide service to neighborhood residents, those leaving work late, and individuals visiting the arena." The Board also accepted the applicant's testimony that "he could not develop . . . [the] restaurant without a drive thru. Therefore, the drive thru promotes a permitted use[.]" In its decision, the Board noted that the City Planners recommended approval of the variance and that the Trenton Landmarks Commission for Historic Preservation likewise approved the application.
On August 10, 2004, plaintiff Lamberton Historic District Committee (Lamberton) appealed the Zoning Board's decision to the City Council (the Council). After conducting a hearing, the Council unanimously adopted a Resolution dated October 7, 2004, affirming the Board's decision. The Resolution adopted the findings of fact set forth in the Board's decision and "determined that the record before the [Board] was sufficient to support the decision of the Board," and "that the Appellant has failed to present any [arguments] that would justify reversal, remand or modification of the Zoning Board's decision."
Lamberton and eight additional plaintiffs filed a complaint in lieu of prerogative writs on November 5, 2004, challenging the Council's decision. The complaint contended that the Board had no jurisdiction to grant variances from the requirements of the Redevelopment Plan. The complaint also challenged the Board's decision as unreasonable, arbitrary and capricious. Plaintiffs further contended that the City Council did not make an independent determination and did not make sufficient findings to support its decision.
*819 In a written opinion issued July 8, 2005, Judge Linda Feinberg concluded that the Zoning Board had jurisdiction to hear the application and to grant a variance from the requirements of the Redevelopment Plan. However, she concluded that the Council had "failed to properly conduct a de novo review," because the Council had not made independent findings of fact to support its conclusions and had improperly placed the burden of proof on the objectors rather than on the applicant. See Comm. for a Rickel Alternative v. City of Linden, 111 N.J. 192, 199-200, 543 A.2d 943 (1988). Accordingly, by order dated August 5, 2005, she affirmed "the determination of the Board of Adjustment . . . to exercise jurisdiction to grant a use variance from the Redevelopment Plan" but remanded the matter to the Council to conduct a proper de novo review within sixty days; she retained jurisdiction.
At a meeting on September 8, 2005, the seven-member Council again voted unanimously to approve a Resolution granting the application.[2] Once again, plaintiffs challenged the Council's decision, this time contending that Councilman Ungrady, who represented the ward in which the restaurant would be located, had a conflict of interest and had improperly solicited votes from other Council members. The proofs, as reflected in the record provided to us, were as follows.
One of Councilman Bethea's constituents submitted a certification attesting that Bethea had advised her "that Councilman Ungrady asked him for his support regarding the Taco Bell appeal." Councilman Bethea allegedly "referred to his vote as a `courtesy vote' to affirm the [Zoning Board] decision." Plaintiff Frank Weeden submitted a certification asserting that Ungrady was "an interested party regarding the variance matter" because he had unsuccessfully "attempted to testify before the Zoning Board in support of the variance." Weeden also attested to hearsay statements indicating that Ungrady was a friend of the applicant's principal, John Tomasulo. He attested to Bethea's admission to him that, prior to both Council votes, Ungrady had asked Bethea for a "courtesy vote" in favor of the application. Weeden also cited a statement made by Councilwoman Lartigue during the Council's first vote on the application, that she was voting "in support of" Ungrady. Weeden contended that "Mr. Ungrady unduly influenced other Council members to vote in his favor based on personal and political considerations rather than land use or planning considerations."
In opposition, the applicant submitted certifications from Tomasulo and Ungrady. Tomasulo denied that he was a friend of Ungrady or that he had even been acquainted with him prior to the application. Ungrady attested that he was not a friend of Tomasulo and confirmed that he had not been permitted to speak before the Zoning Board. While Ungrady admitted discussing "the merits of the application with some of the Council members" and telling them that he "thought it was a meritorious application based on the evidence," he denied asking anyone to cast an affirmative vote "as a courtesy to me." Neither party submitted a certification from Bethea.
In a written opinion issued on November 4, 2005, Judge Feinberg concluded *820 that plaintiffs had not presented any legally competent evidence that Ungrady and Tomasulo were friends. She also concluded that there was no evidence that Ungrady had a personal interest in the applicant's project and his mere attendance at the Zoning Board meeting was not sufficient to disqualify him from voting on the application as a Council member. However, she concluded that, if true, the allegations that Ungrady solicited "courtesy votes" would undermine the validity of the Council's decision, because members would have voted based on political considerations and "back room deals" rather than based on the merits of the application. The judge noted that permitting discovery and a hearing on the merits of the "courtesy vote" allegation, or referring the matter to "the local governmental agency responsible for investigating complaints regarding violations of the Ethics Law," would unduly delay the application. To avoid further delay in deciding the merits of the application, the judge decided that "the most equitable disposition" would be to by-pass review by the Council and decide the matter herself.
We need not repeat in detail Judge Feinberg's comprehensive discussion of the merits of the application, with which we agree. She determined once again that the Board had jurisdiction to decide the application, although the applicant sought a variance from a provision of the Redevelopment Plan. She also concluded that "there is substantial evidence in the record to establish that the proposed use of the property is particularly suited to the location," that it furthered the purposes of the Redevelopment Plan, and that the project would not cause "a substantial detriment to the public good or to the intent and purpose of the Redevelopment Plan."

II
On this appeal, plaintiffs' brief raised the following issues:
POINT I: THE ZONING BOARD OF ADJUSTMENT LACKS JURISDICTION TO GRANT VARIANCES FROM THE REDEVELOPMENT PLAN.
THE LOCAL REDEVELOPMENT AND HOUSING LAW VESTS EXCLUSIVE JURISDICTION IN THE PLANNING BOARD TO APPROVE DEVELOPMENT APPLICATIONS IN REDEVELOPMENT AREAS.
POINT II: THE JURISDICTION OF THE ZONING BOARD OF ADJUSTMENT IS ESTABLISHED BY THE MUNICIPAL LAND USE LAW AND DOES NOT EXTEND TO GRANTING VARIANCES FROM A REDEVELOPMENT PLAN.
POINT III: THE LOCAL GOVERNMENT ETHICS LAW AND THE MUNICIPAL LAND USE LAW REQUIRE THAT THE COUNCIL'S DECISION BE REVERSED.
POINT IV: THE LAW DIVISION JUDGE ERRED IN SUBSTITUTING HER JUDGMENT FOR THE DECISION OF CITY COUNCIL AND THE ONLY REMEDY WAS TO REMAND TO THE COUNCIL.
POINT V: THE GRANT OF THE USE VARIANCE IS ARBITRARY, CAPRICIOUS AND UNREASONABLE AND MUST BE OVERTURNED.
At oral argument, however, the issues were narrowed somewhat. Plaintiffs' counsel abandoned the argument that the Planning Board had jurisdiction over the variance application. Candidly conceding that the Redevelopment Plan in this case constituted overlay zoning, she agreed that the variance application was properly presented to the Zoning Board. However, *821 she contended that, while the Zoning Board could grant variances from requirements set forth in the zoning ordinance, the Board could not grant variances from the requirements of the Redevelopment Plan. On this theory, neither the Zoning Board nor the Planning Board could grant a variance from the Redevelopment Plan's prohibition against drive-in windows. Rather, according to plaintiffs' argument, the applicant could only obtain relief through an amendment to the Redevelopment Plan.
Plaintiffs' counsel also conceded at oral argument that the only issue plaintiffs were pursuing with respect to Councilman Ungrady was the contention that he had sought "courtesy votes" from other Council members. Counsel for JAT agreed that Ungrady's lobbying efforts were probably wrong, but urged that his client was innocent of any wrongdoing and was entitled, under N.J.S.A. 40:55D-17, to an expeditious decision on its application.
Consequently, we focus on three issues: 1) whether the Zoning Board had jurisdiction to grant a variance from the Redevelopment Plan's prohibition against drive-thru windows; 2) whether Judge Feinberg properly reviewed the Zoning Board's decision herself; and 3) whether the judge correctly determined that the Board's decision was sustainable. We answer all of these questions in the affirmative.[3]
We begin by addressing the Zoning Board's jurisdiction to grant a variance from the Redevelopment Plan. The issue is novel. See William M. Cox, New Jersey Zoning and Land Use Administration, § 38-9.2 at 903 (2007). The Local Redevelopment and Housing Law (LRHL), N.J.S.A. 40A:12A-7, provides that a redevelopment plan, by its terms, must indicate whether it supersedes local zoning ordinances within the redevelopment area or whether it constitutes overlay zoning:
The redevelopment plan shall describe its relationship to pertinent municipal development regulations as defined in the "Municipal Land Use Law," P.L. 1975, c. 291 (C.40:55D-1 et seq.). The redevelopment plan shall supersede applicable provisions of the development regulations of the municipality or constitute an overlay zoning district within the redevelopment area. When the redevelopment plan supersedes any provision of the development regulations, the ordinance adopting the redevelopment plan shall contain an explicit amendment to the zoning district map included in the zoning ordinance. The zoning district map as amended shall indicate the redevelopment area to which the redevelopment plan applies.
[N.J.S.A. 40A:12A-7c.]
In effect, the redevelopment plan becomes either all or part of the zoning for the redevelopment area. See Jersey Urban Renewal, LLC v. City of Asbury Park, 377 N.J.Super. 232, 235, 872 A.2d 137 (App. Div.), certif. denied, 185 N.J. 392, 886 A.2d 662 (2005); Hirth v. City of Hoboken, 337 N.J.Super. 149, 164-65, 766 A.2d 803 (App. Div.2001). As plaintiffs concede, in this case the Redevelopment Plan constitutes overlay zoning, because the City did not *822 amend its zoning district map pursuant to N.J.S.A. 40A:12A-7c.[4]
The term "overlay zoning" refers to a situation in which a municipality leaves in place the existing zoning regulations applicable to an area, but superimposes an additional set of requirements. In a case involving flood plain regulation, we described "overlay zoning" as follows:
[W]ith its flood plain ordinance, Ocean Township has adopted what is referred to as an "overlay" district, that is, it has left in place the districts adopted in its Zoning Ordinance but added a new layer of controls when the land is located within a 100 year flood plain. See, Rathkopf, The Law of Zoning and Planning, § 7.03 at 7-17 (4th Ed.). Under the "overlay" zoning, no building or structure, regardless of whether it is residential, can be constructed within the 100 year flood plain.
[Terner v. Spyco, Inc., 226 N.J.Super. 532, 544, 545 A.2d 192 (App.Div.1988).]
Having considered the type of zoning involved here, we next consider the Zoning Board's responsibility, if any, with respect to that zoning. The LRHL gives the planning board jurisdiction to review
[a]ll applications for development or redevelopment of a designated redevelopment area or portion of a redevelopment area . . . in accordance with the requirements for review and approval of subdivisions and site plans as set forth by ordinance adopted pursuant to the [Municipal Land Use Law].
[N.J.S.A. 40A:12A-13.]
Thus, in reviewing plans for projects in a redevelopment area, the statute contemplates that the planning board will carry out a function analogous to its normal function in reviewing plans under the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -163.[5] The question here is whether, with respect to building projects in a redevelopment area, the zoning board also has jurisdiction to carry out the functions it ordinarily would discharge under the MLUL, in particular, the granting of use variances from the overlay requirements of the Redevelopment Plan as well as from the requirements of the underlying zoning ordinance. In answering that question we draw some guidance from Terner, supra.
In Terner, we determined that, due to the inter-relationship between Department of Environmental Protection regulations allowing a hardship waiver for building in a flood plain and the provisions of the MLUL authorizing a planning board to grant hardship waivers from zoning requirements, a variance application to build in a flood plain should be submitted to the planning board rather than to the zoning board:
Ordinarily, an applicant who proposes to construct a principal structure in an area restricted against such a principal structure must apply to the Board of Adjustment for a "d" variance. Arguably, Spyco should have been required to follow the same procedure here as the Ordinance prohibits all buildings and structures in the overlay area.
On the other hand, there are convincing reasons as to why a variance from a flood plain ordinance should be handled by the Planning Board as a "c" variance.
[Terner, supra, 226 N.J.Super. at 544, 545 A.2d 192.]
*823 Absent such special considerations as existed in Terner, it is consistent with the MLUL that an application for an exception to a redevelopment plan requirement, of a type that would ordinarily constitute a use variance, should be heard by a zoning board.[6] We agree with the authors of the New Jersey Zoning and Land Use Administration treatise on that point:
[T]he law is silent as to the procedure to be followed by owners of properties in [redevelopment] area[s] seeking a variance from the zoning regulations adopted under the redevelopment plan.
. . . .
In the absence of an articulated legislative scheme dealing with variances, it would seem that such property owners are entitled to seek the same sorts of relief as any other property owner lest the property owner be deprived of the use of his property in the face of the sort of hardships that justify the grant of variances generally. . . . The same rules for deciding which board has jurisdiction should apply as generally. The primary distinction would seem to lie in consideration of the negative criteria where the appropriate board should be mindful of the provisions of the redevelopment plan in much the same way as they would be of the master plan.
[William M. Cox, New Jersey Zoning and Land Use Administration, § 38-9.2 at 903-04 (2007).]
Accepting plaintiffs' contention, that no variances may be granted from the provisions of a redevelopment plan, would lead to absurd and draconian results, potentially throughout an entire municipality.
Pursuant to [the Redevelopment] Act, a municipal governing body has the authority to determine whether areas within its jurisdiction are "areas in need of redevelopment." N.J.S.A. 40A:12A-4, -5, and -14. The governing body must, by resolution, determine which areas are in need of rehabilitation; however, that area may include the entire municipality.

[Bryant v. City of Atl. City, 309 N.J.Super. 596, 603, 707 A.2d 1072 (App.Div. 1998) (emphasis added).]
See N.J.S.A. 40A:12A-14. Under plaintiffs' proposed construction, property owners would be unable to obtain even the most minor exception to the requirements of a redevelopment plan without applying to the governing body for a plan amendment. And this restriction might apply to property owners throughout an entire city. Nothing in the LRHL or its stated purpose suggests that the Legislature intended to impose such a cumbersome, impractical, and potentially unconstitutional requirement. See Stop & Shop Supermarket Co. v. Bd. of Adjustment of Springfield, 162 N.J. 418, 429-30, 744 A.2d 1169 (2000) (discussing the constitutional theory underlying the development of zoning variances).
The Legislature enacted the LRHL in recognition of persistent "conditions of deterioration in housing, commercial and industrial installations, public services and facilities and other physical components and supports of community life." N.J.S.A. 40A:12A-2a. The statute was created "to *824 codify, simplify and concentrate prior enactments relative to local redevelopment and housing, to the end that the legal mechanisms for such improvement may be more efficiently employed." N.J.S.A. 40A:12A-2d. Thus the LRHL was intended to expedite redevelopment of blighted areas, not to handcuff potential development by denying exceptions where needed to make development possible.
The MLUL was established "[t]o encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals, and general welfare." N.J.S.A. 40:55D-2a. The MLUL authorizes municipalities to create "development regulations" in the form of zoning ordinances, N.J.S.A. 40:55D-4, within zoning districts, N.J.S.A. 40:55D-62(a) and -65. The language of the LRHL, N.J.S.A. 40A:12A-7(c), uses similar terminology in referring to the redevelopment plan's relationship to "pertinent municipal development regulations" and the redevelopment plan either becoming an overlay on, or replacement for, the existing zoning district.
The MLUL authorizes the zoning board to "hear and decide requests for interpretation of the zoning map or ordinance" and to "grant variances" from municipal zoning requirements enacted pursuant to "Article 8," which is the portion of the MLUL concerning "Zoning," N.J.S.A. 40:55D-62 to -68.6. The MLUL does not specifically authorize a zoning board to grant a variance from a redevelopment plan, and the LHRL is silent on the subject of variances. However, since the two statutes deal with the same subjects of zoning and land development, although the MLUL is more specific in dealing with zoning exceptions, we construe the two statutes in pari materia. See DePalma v. Bldg. Inspection Underwriters, 350 N.J.Super. 195, 222, 794 A.2d 848 (App.Div.2002).
Construing the two statutes together, we perceive no tension between the purpose of adopting a redevelopment plan and the function of the zoning board to grant use variances from the redevelopment plan, as an overlay upon the existing zoning. In Britwood Urban Renewal, LLC v. City of Asbury Park, 376 N.J.Super. 552, 567, 871 A.2d 129 (App.Div.2005), we rejected an argument that N.J.S.A. 40A:12A-7c was evidence that the LRHL superceded the MLUL, observing that, with one exception not relevant here, "no provision of the LRHL specifies that it supercedes the MLUL." Ibid. We specifically recognized that the LRHL does not supercede the MLUL with respect to the function of the planning board; both statutes provide that planning boards will review site plan applications under N.J.S.A. 40A:12A-13 and N.J.S.A. 40:55D-25a(2). Ibid. We see no reason to reach a different result with respect to the function of the zoning board, which is entrusted by the MLUL with the authority to grant exceptions to zoning requirements in individual cases. Moreover, the zoning board may consult with the planning board if there is a question as to the design and intendment of the redevelopment plan. See Kenwood Assocs. v. Bd. of Adjustment of Englewood, 141 N.J.Super. 1, 6-7, 357 A.2d 55 (App.Div.1976).[7]
*825 This case is a textbook example of the need for an efficient means of obtaining a variance from an overlay redevelopment plan. The property in question is an oddly shaped, isolated, polluted piece of land which has gone undeveloped for years. The applicant seeks to build a restaurant, one of the types of development the Redevelopment Plan seeks to encourage. However, according to the applicant's evidence, which the Board accepted as credible, the property is uniquely suited for a restaurant with a drive-thru window, and the project will not be economically viable without the drive-thru feature. On this record, the choice facing the City is not between JAT's project and the more upscale establishment the objectors would prefer to see in their neighborhood. The choice is between JAT's project and the status quo, which is an undeveloped lot. Allowing the applicant to apply to the Zoning Board for a use variance serves the purpose of the LRHL by permitting an exception where it would serve the goals of the Redevelopment Plan.[8] Accordingly, we agree with the trial judge that the Zoning Board had jurisdiction to hear JAT's variance application.
Next we address the trial judge's decision to hear the merits of the Board's decision. In the circumstances of this case, we conclude that Judge Feinberg acted properly in reviewing the Board's decision herself. Plaintiffs did not challenge the Council's decision on the merits. Hence, if the judge had held an evidentiary hearing on the conflict issue and decided that Ungrady's alleged actions did not invalidate the Council's decision, there would have been no basis to do anything other than dismiss the complaint. On the other hand, if the judge had held a plenary trial and decided that the Council's decision was fatally flawed, she would then have faced the same issue she decided here. Would it be equitable to remand the case to the Council for a third hearing? We answer that question the same way she did.
The applicant was entitled to a decision from the City Council within a short time frame, pursuant to N.J.S.A. 40:55D-17c, which provides:
The governing body shall conclude a review of the record below not later than 95 days from the date of publication of notice of the decision below. . . . Failure of the governing body to hold a hearing and conclude a review of the record below and to render a decision within such specified period shall constitute a decision affirming the action of the board.
The clear import of this statute is that the Council's review shall be expeditious so as not to unfairly delay the application. In this case, where the application had been pending since March 2004 and the Council had twice unanimously approved it, remanding the matter to the Council for a third hearing would be unfair to the applicant and inconsistent with the statute. Moreover, in light of the Board's conclusion that this project would further the *826 purpose of the Redevelopment Plan by providing jobs and economic development in a blighted area, additional delay would not serve the public interest. In that connection, we note that although plaintiffs raised aesthetic and policy objections to the application, the local historic preservation commission did not object to this project.
Finally, having reviewed the record, we conclude that the Board's decision to grant the variance application was reasonable, properly supported by its detailed resolution, and consistent with applicable law. See Medici v. BPR Co., 107 N.J. 1, 15, 526 A.2d 109 (1987). We affirm Judge Feinberg's decision for the reasons stated in her cogent opinion dated July 8, 2005. Plaintiffs' arguments on this issue are without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] The Board treated the application as subject to the prohibition on "drive-in" restaurants. The terms "drive-in" and "drive-thru" will be used interchangeably in this opinion. Other aspects of the variance application are not discussed here as they are not pertinent to the appeal.
[2] Neither party provided us with a copy of the Resolution, presumably because plaintiffs did not challenge the substance of the Resolution in the trial court or on appeal. In a letter dated January 16, 2006, plaintiffs' counsel advised us that "we are not challenging the decision of City Council based on the record of the second hearing on remand." In any event, having failed to provide us with the record, plaintiffs have waived any challenge to the Council's decision apart from the conflict issue discussed infra.
[3] It may be argued that plaintiffs waived their right to appeal on issues one and three when they did not include in their notice of appeal Judge Feinberg's July 5, 2005, order addressing the jurisdictional issue, and when they advised her that their only issue with respect to the Council's second decision was the alleged conflict of interest. However, we have decided to address those issues, because they are fairly presented by Judge Feinberg's November 4, 2005, opinion which formed the basis for the November 15, 2005, order on appeal, and because plaintiffs evidently did not expect that the trial court would review the merits of the Zoning Board's decision.
[4] In this opinion we address the Zoning Board's jurisdiction to grant a variance from the Redevelopment Plan as overlay zoning, because that is the issue presented to us.
[5] The planning board must also review all proposed amendments to a redevelopment plan. N.J.S.A. 40A:12A-7e and f.
[6] We do not decide whether a redeveloper, which has covenanted with a municipality to carry out the redevelopment plan, may obtain a waiver or variance from the provisions of the plan. That is a separate issue. See William M. Cox, New Jersey Zoning and Land Use Administration, § 38-9.2 at 903 (2007). Nor do we address the situation presented in Jersey Urban Renewal, LLC, supra, 377 N.J.Super. at 236, 872 A.2d 137, in which the plan required that all redevelopment be conducted by a designated redeveloper or be conducted with the redeveloper's prior approval.
[7] Where a city council has authority to review decisions of the zoning board, pursuant to N.J.S.A. 40:55D-17a, there is an additional check on the board's power to grant variances that undermine a redevelopment plan adopted by the council. If a city council does not have such authority it may still challenge a zoning board's grant of a variance in certain limited circumstances. See Twp. of Stafford v. Stafford Twp. Zoning Bd. of Adjustment, 154 N.J. 62, 81, 711 A.2d 282 (1998); Twp. of Dover v. Bd. of Adjustment of Dover, 158 N.J.Super. 401, 411-13, 386 A.2d 421 (App. Div.1978). We express no view as to whether the same standard would apply to a council challenging the grant of a variance from a redevelopment plan as would apply to a variance from the regular zoning ordinance.
[8] Plaintiffs' reliance on City of Trenton v. 222 West Assocs. Fund, 350 N.J.Super. 600, 796 A.2d 913 (App.Div.2002), is misplaced. In that case, we held that the City had no authority to permit development inconsistent with a redevelopment plan, because that plan in turn was statutorily mandated by the Capital City Renaissance Plan, pursuant to N.J.S.A. 52:9Q-17. Id. at 607-09, 796 A.2d 913. Plaintiffs do not contend that the Renaissance Plan affects JAT's project.