871 A.2d 129 (2005)
376 N.J. Super. 552
BRITWOOD URBAN RENEWAL, LLC, Plaintiff-Appellant,
v.
CITY OF ASBURY PARK, Defendant-Respondent, and
City Council of Asbury Park, Defendant, and
Asbury Partners, LLC, Defendant/Intervenor-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 6, 2004.
Decided April 20, 2005.
*130 Paul V. Fernicola, Red Bank, argued the cause for appellant (Bowe & Fernicola, *131 attorneys; Mr. Fernicola, of counsel and on the brief; Angela White Dalton, on the brief).
James G. Aaron, Wall, argued the cause for respondent City of Asbury Park (Ansell Zaro Grimm & Aaron, attorneys; Mr. Aaron and Lawrence H. Shapiro, of counsel and on the brief).
Martin L. Borosko, Livingston, argued the cause for intervenor/respondent Asbury Partners (Becker Meisel, attorneys; Mr. Borosko and Matthew S. Connor, on the brief).
Before Judges CUFF, WEISSBARD and HOENS.
The opinion of the court was delivered by
HOENS, J.A.D.
This appeal arises in the context of the on-going efforts to redevelop the waterfront in the City of Asbury Park. As such, it raises numerous issues of first impression. More specifically, in this appeal we consider the relationship between the provisions of the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to -49 (LRHL), and the Municipal Land Use Law, N.J.S.A. 40:55D-1 to -163 (MLUL), as those provisions affect the City's authority to require contributions toward the cost of off-site infrastructure improvements. We also address issues concerning the statutory definition of a redeveloper and the technical definition of a Subsequent Developer as they relate to the City's authority to require off-site infrastructure improvement contributions. Further, the appeal raises issues relating to the scope of the Planning Board's authority in the redevelopment context. Finally, we consider the authority of the City to impose contributions toward anticipated off-site infrastructure costs, by ordinance or otherwise, on properties within the redevelopment zone following final site plan approval.
Plaintiff Britwood Urban Renewal, LLC appeals from the February 9, 2004 order of the Law Division that denied plaintiff's motion for summary judgment, that granted the cross-motions for summary judgment filed by defendant City of Asbury Park and intervenor Asbury Partners, LLC and that dismissed plaintiff's complaint. Since the time of the order, plaintiff has been required to deposit a total of $300,000 in an escrow account. We reverse.
The facts that are relevant to the issues on appeal are as follows. Plaintiff owns a thirty-one unit apartment building in Asbury Park. The building was originally constructed in the 1920s and each unit has an existing water and sewer connection. Plaintiff's deed and the tax map designated the property as Block 159, Lot 24. The property is also commonly known as 218 Second Avenue in the City of Asbury Park. On August 1, 1984, long before plaintiff purchased its property, the Asbury Park City Council adopted a resolution approving a report by the Asbury Park Planning Board that determined that certain areas along the Asbury Park oceanfront qualified as "areas in need of redevelopment." The designation of the area, also known as the Waterfront Redevelopment Zone, included the property that was subsequently acquired by plaintiff.
After the 1984 adoption of the first redevelopment resolution, several entities not parties to this dispute held redevelopment rights or were engaged to be the City's designated redeveloper. In 2002, the City hired Asbury Partners to undertake a new study of the Waterfront Redevelopment Zone. Shortly thereafter, Asbury Partners, with assistance from a consulting firm, Clarke Caton Hintz, drafted the proposed Waterfront Redevelopment Plan. On or *132 about January 16, 2002, the City Council directed the Asbury Park Planning Board to review the proposed Waterfront Redevelopment Plan pursuant to the provisions of the Local Redevelopment and Housing Law, N.J.S.A. 40A:12A-1 to -49 (LRHL).
On April 26, 2002, the Planning Board issued the report of its findings and its proposed changes to the Waterfront Redevelopment Plan. On June 5, 2002, the City Council adopted Ordinance 2607, which accepted the Waterfront Redevelopment Plan that had been proposed by Asbury Partners and adopted some, but not all, of the changes that had been proposed by the Planning Board.
The Plan listed plaintiff's property "within the prime renewal area" and designated it as a property that Asbury Park "will, at the request of the developer, acquire, through the power of eminent domain." The Plan also included plaintiff's property in its list of historic and/or significant buildings. It acknowledged that plaintiff's building, known as the Britwoods Court Apartments, was vacant and concluded that the property "must be completely renovated to be compatible with the new development proposed for this block." However, the Plan specifically exempted plaintiff's property from condemnation if its owner started the needed renovations "within one year of the adoption of this plan."
The Plan also required, in general, "upgrades to the existing infrastructure in order to accommodate the proposed development and ensure a reliable utility base for the City of Asbury Park." A list of "involved utilities" included sanitary sewer and storm sewer, each of which was designated as the City's responsibility.
In addition to adopting the Plan, the City Council also considered several Planning Board recommendations, including two that are relevant to this appeal. First, "[t]he [Planning] Board recommend[ed] that private property owners have the right to develop their properties consistent with the Redevelopment Plan and they understand that the development will require contribution for offsite, off-track improvements." Second, the Planning Board recommended an amendment to the Master Plan to include "a circulation and public utility element," without which Asbury Park could not require contributions from individual developers for off-site improvements.
The City Council, as a part of its consideration of the Plan and its adoption of Ordinance 2607, rejected these recommendations as inconsistent with the philosophy of the prior redevelopment agreements which authorized a single developer. The Ordinance instead permitted property owners to negotiate with Asbury Partners "to obtain developer status and submit plans which could include their property for an entire project which would be subject to review by the Planning Board and the redevelopment authority."
On October 28, 2002, the City and Asbury Partners entered into the Amended and Restated Redeveloper and Land Disposition Agreement. That agreement designated Asbury Partners as "the exclusive Master Developer of the Asbury Park Waterfront Redevelopment Area," pursuant to the Plan. The agreement superseded and substituted for all prior agreements with all predecessor developers. Pursuant to the terms of that agreement, Asbury Partners "has and may acquire and clear land for subsequent redevelopment by other qualified developers (`Subsequent Developers')." The agreement defined a "Subsequent Developer" to be "a purchaser, assignee or transferee of Master Developer's rights, interest and/or title in or to part of the Project."
*133 Of particular relevance to the dispute between the parties, the agreement provided that Asbury Partners was responsible for "the construction of infrastructure improvements," which would be paid for by fees assessed to Subsequent Developers. The agreement defined "Infrastructure Improvements" as "those public utility, street, traffic signalization and walkway, park, lighting and landscape improvements to be constructed and funded by the Master Developer." Further, the agreement provided as follows:
The parties agree that the Master Developer shall be responsible for the costs of all reasonable infrastructure repairs or improvements within the Redevelopment Area, whether associated with property it develops, sells to, or causes a Subsequent Developer to develop or rehabilitate.
The parties further agree th[at] Plan IV [the Plan] contemplates a fair and equal distribution of the infrastructure costs by the new buildings and that the acquisition and construction outlined therein is critical to the infrastructure funding and construction.
In connection with infrastructure improvements, Asbury Partners represented that it had retained an engineering firm to review, among other things, existing sewer, water and other utilities, as well as traffic and street patterns and signals. It agreed to share that firm's report with the City, after which the parties agreed that they would "review the report and agree to a reasonable schedule, estimated cost, type and method of repair of infrastructure components in the Redevelopment Area." Although no report or cost estimate is included in the record, and although the City concedes it cannot make an "exact calculation", it represents that these infrastructure improvements will cost approximately $50,000,000.
In a separate section of the agreement, entitled "Sewer Treatment Capacity," the City and Asbury Partners further agreed and acknowledged "that there is sufficient sewerage treatment capacity for the project." The agreement provided, however, for the possibility of a sewerage treatment plan upgrade at the option of Asbury Partners. The purpose of that upgrade, if elected, would be to correct "a deleterious odor" and the work would be paid for "through a special assessment of sewerage permit fees for new construction in the Prime Renewal Area."
Procedurally, the agreement called for a technical review committee (TRC), which would
utilize the design standards in the Plan IV for review and comment of applications, before being reviewed by the Planning Board....
The Mayor and Council, acting as the Redevelopment Agency and the Planning Board shall first submit all site plans for review to the [TRC] and shall be guided by their comments.
On October 24, 2002, the City Council approved this Amended and Restated Redeveloper and Land Disposition Agreement by adopting Ordinance 2617.
On September 26, 2002, shortly before the adoption of Ordinance 2617, plaintiff purchased the property at issue in this dispute. Consistent with the Plan's provision creating a one-year window within which to start renovations to the property so as to exempt it from condemnation, plaintiff sought preliminary and final site plan approval for its proposal to renovate the building on the property. On May 5, 2003, plaintiff appeared before the Planning Board on that application. Before presenting any testimony or evidence, however, plaintiff's counsel asked the Planning Board for a ruling about whether plaintiff was required to make pro rata *134 contributions for off-site infrastructure improvements, because that subject had been raised by the Planning Board's engineer.
Plaintiff argued that the Planning Board could not condition the approval of its site plan application upon the payment of contributions for off-site improvements because Asbury Park did not then have an appropriate ordinance authorizing imposition of that obligation on plaintiff or others. See N.J.S.A. 40:55D-42. Plaintiff also argued that because its project merely involved rehabilitation of an existing building rather than new development pursuant to the Plan, off-site contributions could not be required as a condition of approval of its application.
Representatives of Asbury Partners were present at the May 5, 2003 Planning Board meeting. They asked the Planning Board to condition approval of plaintiff's application for preliminary and final site plan approval upon payment of contributions for off-site improvement costs in spite of the absence of an authorizing ordinance. Asbury Partners argued that the LRHL superseded the MLUL for off-site contribution purposes. Plaintiff disagreed, relying on an analysis of statutory language that it contended was to the contrary.
Ultimately, the Planning Board's attorney agreed with plaintiff's interpretation and advised the Planning Board that without an appropriate ordinance, the applicant could not be compelled to make an off-site contribution. The Planning Board, following the advice of its attorney, concluded that it lacked the legal authority to condition the approval of plaintiff's preliminary and final site plan application on payment of off-site infrastructure contributions. The Planning Board then adopted its Resolution dated May 12, 2003 approving plaintiff's preliminary and final site plan application. That resolution imposed a variety of conditions on the approval but did not include any requirement that plaintiff contribute to off-site infrastructure improvement costs. The Planning Board did not reach, therefore, plaintiff's alternate argument that its application was not new development and that it was therefore exempt from off-site contributions on that ground.
On May 21, 2003, the City Council, acting in its capacity as the Redevelopment Agency, adopted a resolution entitled "Resolution of the Mayor and Council, Acting as a Redevelopment Authority, Approving Britwood Apartments Rehabilitation of 216-218 Second Avenue with Terms and Conditions" (Britwood Resolution). As a part of the Britwood Resolution, the City granted plaintiff Subsequent Developer status and required plaintiff to contribute to the cost of off-site infrastructure improvements, providing that plaintiff "comply with all requests of the City Engineer in fixing the amount of contribution on a per unit basis for the improvements to the infrastructure of the City of Asbury Park." The resolution was premised on the City's concern that in the absence of such a contribution, plaintiff "would receive a windfall or be unjustly enriched as a result of being able to develop [its] property." The resolution further directed that if "Britwood Apartments refuses to abide by this condition, then, in that event, no Certificates of Occupancies are to issue." In pertinent part, the Britwood Resolution noted that plaintiff was exempt "from appearing before the [TRC] as the [TRC] was not formed at the time initial applications for rehabilitation of the premises were granted." The resolution did not specify how the off-site infrastructure improvement contribution would be calculated, referring instead to a separate proposed ordinance, Ordinance 2633, then listed for consideration.
*135 On the same day, immediately after adopting the Britwood Resolution, the City Council also adopted Ordinance 2633.[1] That Ordinance, entitled "Ordinance Requiring Contributions to Infrastructure Improvements in Waterfront Redevelopment Zone" set general parameters to apply to contributions toward off-site infrastructure costs.
Ordinance 2633 did not include a specific methodology for the calculation of off-site infrastructure contributions. Rather, it provided that residential properties within the Redevelopment Zone would pay between $10,000 and $18,000 per unit when a building permit was issued. The Ordinance left the decision as to the amount to be paid per unit by any particular property to the City Engineer. The Engineer was directed to make his decision based on the specific property and the influence on the overall infrastructure in the area. The Ordinance also imposed a one time fee of $5.00 to $10.00 per square foot on commercial property for off-site infrastructure improvements, the precise amount of which was also to be determined by the City Engineer. Thus, the effect of the adoption of the Britwood Resolution and Ordinance 2633 was to require that plaintiff contribute to the cost of the off-site infrastructure improvements.
Plaintiff alleges that the City provided no notice of the pending Britwood Resolution to plaintiff, its attorney or the public at large, prior to the City Council meeting. Moreover, plaintiff further alleges that the agenda for the City Council's meeting of May 21, 2003 did not list the Britwood Resolution as an item for action by the City Council. By chance, however, one of plaintiff's principals was present at the City Council meeting when the Britwood Resolution and Ordinance 2633 were adopted. The record does not reflect that there was any discussion by the City Council on the Britwood Resolution prior to its adoption.
Plaintiff filed its complaint in lieu of prerogative writs in July 2003, attacking the validity of both the Britwood Resolution and Ordinance 2633 to the extent that those enactments required plaintiff to contribute to off-site infrastructure improvement costs. Plaintiff argued that the Britwood Resolution was invalid because it usurped the power of the Planning Board to review and approve site plan applications and violated the applicable provisions of the MLUL. Plaintiff asserted that Ordinance 2633 was void because it failed to establish standards for calculating the amount of off-site improvement costs. Thereafter, the parties agreed to a consent order which allowed Asbury Partners to intervene and participate as a defendant. In November 2003, plaintiff moved for summary judgment seeking an order declaring that both the Britwood Resolution and Ordinance 2633 were void. Asbury Partners and the City then cross-moved for summary judgment.
The Law Division judge entertained oral argument on behalf of all of the interested *136 parties on December 22, 2003, and issued a written opinion on January 26, 2004, in which he denied plaintiff's motion and granted the cross-motions of the City and Asbury Partners for summary judgment. Shortly thereafter, on February 9, 2004, the judge entered his order effectuating his decision on the motions and dismissing the complaint. Following the issuance of the February 9, 2004 order, the parties agreed that the City would issue Certificates of Occupancy for the units in order to permit their sale and that plaintiff would hold $10,000 per unit from the sale proceeds in escrow pending resolution of this appeal. During the pendency of this appeal, thirty units were sold and a total of $300,000 was deposited into an escrow account. By our order dated June 23, 2004, we denied plaintiff's motion to permit a release of those funds.
On appeal, plaintiff argues that the judge erred: (1) in concluding that the City validly adopted Ordinance 2633 and the Britwood Resolution that required plaintiff to contribute to off-site infrastructure costs; (2) in determining that the City was empowered to add conditions to plaintiff's previously-approved site plan; (3) in concluding that the applicable sections of the MLUL were subordinate to the provisions of the LRHL; and (4) in refusing to invalidate Ordinance 2633 for want of articulated standards for imposition of off-site infrastructure contributions. Because we find merit in plaintiff's arguments, we reverse.
There are three essential holdings in the Law Division judge's opinion that are the focus of this appeal. First, he held that the LRHL grants general authority to the City and to Asbury Partners to impose off-site infrastructure costs on developers who undertake projects within the designated redevelopment area. See N.J.S.A. 40A:12A-8, -8f, -8n and -22. Second, he held that the LRHL was not inconsistent with the MLUL in this regard, concluding that the MLUL also permits the municipality to adopt regulations requiring off-site infrastructure contributions. See N.J.S.A. 40:55D-42. Third, he concluded that the ordinance[2] was a valid exercise of the municipality's authority in spite of the Planning Board's approval of the preliminary and final site plan application inasmuch as plaintiff had not substantially relied thereon. See Tremarco Corp. v. Garzio, 32 N.J. 448, 456, 161 A.2d 241 (1960); Burcam Corp. v. Plan. Bd. of Medford, 168 N.J.Super. 508, 512, 403 A.2d 921 (App.Div.1979). We turn, then, to each of these essential holdings in our analysis of the arguments raised in this appeal.
We begin with some of the salient features of the statutes that affect our analysis. In general, the LRHL empowers and assists local governments in their efforts to arrest and reverse deterioration in "housing, commercial and industrial installations." N.J.S.A. 40A:12A-2. In pertinent part, the statute authorizes municipalities to designate areas in need of redevelopment or rehabilitation and to adopt and implement a redevelopment plan to achieve the goals of redevelopment. N.J.S.A. 40A:12A-4 to -8. As a part of that statutory scheme, and in order "to carry out and effectuate the purposes of this act and the terms of the redevelopment plan," the municipality or its designated redevelopment entity may "negotiate and collect revenue from a redeveloper to defray the costs of the redevelopment entity." N.J.S.A. 40A:12A-8f.
*137 Significant to this appeal, however, is the fact that the sums may be collected only from a redeveloper, which is specifically defined to be:
any person, firm, corporation or public body that shall enter into or propose to enter into a contract with a municipality or other redevelopment entity for the redevelopment or rehabilitation of an area in need of redevelopment, or an area in need of rehabilitation, or any part thereof, under the provisions of this act, or for any construction or other work forming part of a redevelopment or rehabilitation project.
[N.J.S.A. 40A:12A-3.]
In addition, several subsections of the LRHL address infrastructure improvements in the context of redevelopment. For example, the redevelopment plan must consider public improvements. N.J.S.A. 40A:12A-7a(1). A public body may contract with a public agency to "provide and maintain parks, recreation centers, schools, sewerage, transportation, water and other municipal facilities" as part of a redevelopment project. N.J.S.A. 40A:12A-22m. A public body may, in connection with a redevelopment project, undertake infrastructure improvements, including recreational, water, sewer, and drainage facilities, as well as closing, installing or replanning streets and sidewalks. N.J.S.A. 40A:12A-39b, -39c.
Moreover, the LRHL authorizes a public body to issue bonds and incur other indebtedness to finance redevelopment. N.J.S.A. 40A:12A-16a(5), -22c, -29 to -37. However, apart from the specific authorization in the LRHL that permits the redevelopment entity to collect funds from a redeveloper, see N.J.S.A. 40A:12A-8f, the LRHL does not permit the public body to require contributions to off-site infrastructure costs.
Our analysis of this statute compels us to conclude that the Law Division judge erred. Taken together, these statutory provisions impose specific requirements on any municipality respecting off-site infrastructure contributions in the redevelopment context. In the absence of compliance with each statutory element, the City had no authority to impose any portion of those costs on plaintiff.
In particular, the City lacked authority under the LRHL to impose off-site contributions on this plaintiff because of the statutory definition limiting imposition of off-site contributions to redevelopers. Because there is no contract or proposed contract between plaintiff and the City, or even between plaintiff and Asbury Partners, to perform any redevelopment, rehabilitation, or other work, plaintiff is not a redeveloper. See N.J.S.A. 40A:12A-3. Rather, plaintiff is a property owner seeking municipal approval to renovate its building which is located within the redevelopment zone. See N.J.S.A. 40A:12A-8j. As to plaintiff, the LRHL authorizes "plans for carrying out a program of voluntary repair and rehabilitation of buildings and improvements," which are consistent with the redevelopment plan. See N.J.S.A. 40A:12A-8j(1). There is, however, no authority in the LRHL for municipalities like the City, or their designated redevelopment entities, like Asbury Partners, to collect revenue from owners, like plaintiff, who voluntarily repair or rehabilitate their buildings.
Even were we to conclude, as Asbury Partners urges, that plaintiff's proposed renovations are so extensive that they constitute, de facto, redevelopment and rehabilitation within the meaning of the LRHL, the absence of a contract between plaintiff and either the City or Asbury Partners is fatal to the effort to impose a contribution *138 toward off-site infrastructure improvement costs on plaintiff.
Similarly, although the Britwood Resolution designated plaintiff as a Subsequent Developer, it was ineffective for the purpose of permitting the City to impose off-site infrastructure costs on plaintiff. While, in theory, a Subsequent Developer might be liable for a portion of the costs of off-site infrastructure improvements, plaintiff could not be deemed to be a Subsequent Developer. Because that term is defined in the agreement between the City and Asbury Partners to mean an entity for which Asbury Partners "acquire[s] and clear[s] land for subsequent redevelopment," that status is not applicable to plaintiff. Nor are Asbury Partners' other arguments about the perceived wisdom of assessing part of the costs to plaintiff persuasive. In this regard, Asbury Partners argues that "simple common sense" supports the conclusion that the expected "rise in population ... will considerably increase usage of the City's infrastructure" and that sharing the cost of the infrastructure improvements is therefore equitable. In the absence of the requisite statutory authority permitting those costs to be imposed on plaintiff, however, these observations are of no consequence.
Second, we disagree both with the Law Division judge's view that the LRHL supersedes the MLUL and with his holding that the MLUL independently authorized the City to impose off-site infrastructure costs on plaintiff. As to the former, the language of the LRHL itself instructs us. The LRHL specifically incorporates the applicable provisions of the MLUL as follows:
All applications for development or redevelopment of a ... portion of a redevelopment area shall be submitted to the municipal planning board for its review and approval in accordance with the requirements for review and approval of subdivisions and site plans as set forth by ordinance adopted pursuant to the [MLUL].
[N.J.S.A. 40A:12A-13.]
This provision of the LRHL makes plain that the MLUL is not superseded by the LRHL but that the MLUL independently governs review and approval of site plan applications.
The City urges us to affirm this aspect of the Law Division judge's analysis, citing its authority under the LRHL, N.J.S.A. 40A:12A-4, to implement its redevelopment plan. The City notes that, under its agreement with Asbury Partners, its mayor and council are the redevelopment agency within the meaning of those terms as defined in the LRHL. The City relies on N.J.S.A. 40A:12A-7c, which provides: "The redevelopment plan shall supersede applicable provisions of the development regulations of the municipality or constitute an overlay zoning district within the redevelopment area." Based on this statutory language the City argues that the LRHL either supersedes the MLUL, or, at a minimum enjoys "co-equality" with the MLUL. We do not agree.
The quoted language merely provides that a redevelopment plan supersedes municipal regulations. It does not follow, however, that the LRHL supersedes the MLUL. Indeed, no provision of the LRHL specifies that it supersedes the MLUL, except for the provision regarding the notice required for the adoption of a redevelopment plan. N.J.S.A. 40A:12-7c. On the contrary, the LRHL coordinates with the MLUL by requiring the Planning Board to review development and redevelopment applications in accordance with the requirements set forth by ordinance pursuant to the MLUL. N.J.S.A. 40A:12A-13.
*139 We further disagree with the Law Division judge's determination that the MLUL broadly authorizes the City to require off-site infrastructure contributions. In reaching this conclusion, the judge relied on N.J.S.A. 40:55D-42 for support. This section, indeed, permits the governing body to require payment of a pro-rata share of the cost of certain off-tract improvements. It requires, however, as its predicate, an analysis of "circulation and comprehensive utility service plans pursuant to [N.J.S.A. 40:55D-28]." No such plans or analyses were undertaken in connection with either the Britwood Resolution or Ordinance 2633. The essential predicate for imposition of these costs on plaintiff, therefore, is absent here.
Nor, for that matter, is there any evidence that plaintiff's project contributes to the need for the sanitary and storm sewer improvements described in the Plan such that an off-site contribution would be permitted by the MLUL. There is, for example, no demonstration that these planned infrastructure improvements are "a direct consequence" of plaintiff's renovation project nor is there a causal relationship between plaintiff's renovation and the need for the off-site improvement. N.J. Builders Ass'n v. Mayor & Tp. Comm. of Bernards Tp., 108 N.J. 223, 237, 528 A.2d 555 (1987); see Holmdel Builders Ass'n v. Tp. of Holmdel, 121 N.J. 550, 571-73, 583 A.2d 277 (1990) (allowing the imposition on developers of fees dedicated to affordable housing); F & W Assocs. v. County of Somerset, 276 N.J.Super. 519, 527-28, 648 A.2d 482 (App.Div.1994) (requiring rational nexus).
Third, we also find merit in plaintiff's argument that both the MLUL and the LRHL vest the Planning Board with exclusive authority to approve site plans, and that the Britwood Resolution and Ordinance 2633 imposing off-site costs on plaintiff improperly interfered with the Planning Board's function. The Law Division judge rejected this argument citing to provisions of the two statutes. In his view, the LRHL authorizes a municipality to collect revenue, N.J.S.A. 40A:12A-8, and the MLUL permits a municipality to adopt an ordinance requiring infrastructure contributions, N.J.S.A. 40:55D-42. He therefore concluded that Ordinance 2633 was valid. This analysis, however, overlooked the fact that the Planning Board's approval of plaintiff's final site plan application preceded adoption of the Ordinance.
Both the LRHL and the MLUL vest authority to decide site plan applications in the Planning Board. The LRHL plainly defers authority for site plan approval to the municipal Planning Board. See N.J.S.A. 40A:12A-13. The MLUL similarly provides that the Planning Board shall "exercise its power in regard to ... site plan review." N.J.S.A. 40:55D-25a(2). Even in a challenge to a Planning Board's decision by way of complaint in lieu of prerogative writs, we defer to the Planning Board's decision unless it is arbitrary, capricious or unreasonable. See Davis v. Plan. Bd. of Somers Point, 327 N.J.Super. 535, 542, 744 A.2d 222 (App.Div.2000).
Plaintiff contends that the Law Division judge erred in refusing to recognize that the Planning Board's site plan approval was final, and that the City was without power to change it by resolution or ordinance, even though plaintiff had not taken any action in reliance on it. Asbury Partners argues in response, however, that the judge properly applied the time-of-decision rule, which permitted the City to change its controlling ordinance after site plan approval and to impose that new condition on plaintiff.
We need only briefly address this issue. As plaintiff points out, the MLUL provides *140 that preliminary site plan approval shall "confer upon the applicant the following rights for a 3-year period ... :(a) That the general terms and conditions on which preliminary approval was granted shall not be changed, including ... off-tract improvements...." N.J.S.A. 40:55D-49.
The Planning Board's resolution of May 12, 2003, approved plaintiff's preliminary and final site plan application. The Planning Board considered whether to require plaintiff to share the cost of off-site infrastructure improvements, but decided against doing so because there was no authorizing ordinance as required by the MLUL. Although the City subsequently adopted the Britwood Resolution and Ordinance 2633 to begin requiring off-site infrastructure contributions, the MLUL barred retroactive imposition of those costs on plaintiff. See N.J.S.A. 40:55D-49.
Nothing in the time-of-decision rule cases cited by the court or the parties suggests a contrary result. See Manalapan Realty v. Tp. Comm. of Manalapan, 140 N.J. 366, 378-79, 658 A.2d 1230 1995); Burcam, supra, 168 N.J.Super. at 511-12, 403 A.2d 921. Each of those decisions addressed alterations to an ordinance adopted while a site plan application was pending. Here, however, once the final site plan application was approved, plaintiff's rights were vested and the City could not thereafter impose further conditions on that approval. See S.T.C. Corp. v. Plan. Bd. of Hillsborough, 194 N.J.Super. 333, 336, 476 A.2d 888 (App.Div.1984).
In summary, our review of the record and the relevant statutes compels us to conclude that the LRHL did not permit the City to impose off-site infrastructure contributions on plaintiff because plaintiff was not a party to a contract and therefore was not a redeveloper, that the MLUL did not independently authorize imposition of these costs on plaintiff and that the City's adoption of the Britwood Resolution and Ordinance 2633 were ineffective as to plaintiff in light of the Planning Board's prior approval of plaintiff's final site plan application. In light of this disposition, we need not reach and we have not considered the validity of Ordinance 2633 in general nor the validity of that aspect of Ordinance 2633 that grants broad discretion to the City Engineer to determine the appropriate level of contributions toward off-site infrastructure improvements. Rather, we conclude that, regardless of the validity of Ordinance 2633, it was ineffective respecting this plaintiff.
Reversed.
NOTES
[1] On May 21, 2003, the City Council also adopted Ordinance 2642. That Ordinance imposed a per-unit assessment on residential properties located in the Plan's prime renewal area, "in the event they are rehabilitated or constructed upon," to be used for "the reconstruction and rehabilitation of the infrastructure." Ordinance 2642 authorized the City Engineer to determine the fee for each unit, depending on "the specific propert[y's] connection and influence on the ... infrastructure in the area." While the relationship between Ordinance 2642 and Ordinance 2633 is not clear from the record, the parties agree that Ordinance 2633, published on May 12, 2003 in advance of the scheduled vote on its adoption on May 21, 2003, contained the language concerning the range of per unit fees to be fixed by the City Engineer.
[2] The opinion refers to Ordinance 2642, but the parties agree that it is Ordinance 2633, setting forth the general parameters of the City Engineer's authority to calculate the off-site infrastructure contribution, that is in issue.